## Jekuta Estate

Before Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Stark & Goldstein,* for petitioner.

*Abraham L. Freedman,* city solicitor, and *Max H. Walls,* assistant city solicitor, for respondent.

BOLGER, J., February 25, 1955.—At the audit of the first and final account of the administrator, claims were presented by the City of Philadelphia for medical care, treatment and maintenance of decedent at Philadelphia General Hospital and at the home for the

indigent for various periods of time beginning with June 2, 1948, until December 28, 1948.

Objection to the claims was made by the accountant for the reason that he believed payment had been received by the city. The accountant did not deny that decedent had received the care for the cost of which the city sought reimbursement. The accountant failed to show that payment had been made and failed to demonstrate that decedent had ability to pay for the care he received during the periods involved. Claims totaling $1,213.80 were allowed and directed to be paid.

Distribution was made in accordance with the adjudication.

On November 20, 1953, the administrator was discharged pursuant to his petition.

About a year later a petition was presented to show cause why the adjudication above referred to should not be reviewed and the claims of the city be discharged.

Petitioner was the distributee of the net estate of decedent. The petition recited that prior to the audit, counsel for the accountant had inquired from counsel for the city whether the assets of this estate which consisted solely of accumulated pensions due to decedent because of a service-connected disability were subject to the claims of creditors. Counsel for the city then wrote to counsel for the Veterans Administration and was informed that the exemption created by the Act of Congress did not apply because of the death of the pensioner. In reliance upon this extraordinary (sic) research, no question was presented to the auditing judge concerning the exemption which appears in the Act of Congress of August 12, 1935, 49 Stat. at L. 609, as amended and which appears in 38 U. S. C. §454(a) as follows:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from . . . the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. . . ."

The basis for the petition is the fact that since the estate of this decedent consisted entirely of pension for service-connected disability due decedent during his lifetime, but not paid to him because his whereabouts could not be ascertained by the Veterans Administration, the act of Congress above cited should apply to the claims of the city. An answer was filed by the City of Philadelphia in which it was denied that petitioner was entitled to a review of the adjudication because distribution had actually been made and it was further denied that the act of Congress, supra, prevented the city from recovering its claim. The answer further points out that payments of the claims were made by the administrator with full knowledge or means of knowledge of all of the facts and the law applicable thereto. In reply thereto petitioner cited the letter received from counsel for the city stating that the Veterans Administration did not consider the funds to be exempt and stated that he had erroneously relied on it.

All of the facts are admitted and there appear to be two questions of law involved. The first is the right of this petitioner to have the court review its adjudication under the circumstances of this case. Counsel for petitioner has cited from several cases an excellent summation of the law of Pennsylvania with respect to the power of this court to correct its own mistakes and even to protect the parties from their own blunders. Not one of the cases cited is in point with the facts

here involved. Chappell's Estate, 264 Pa. 486, decided that a widow had the right to rely on an executor to claim her exemption and allowance and his unfortunate absence in the armed services prevented his performing his duties. Hutchins' Estate, 17 Dist. R. 468, involved a distribution to the accountant and the court was completely satisfied that there had been fraud and undue influence practiced against the interests of a mentally ill beneficiary. In Milne Appeal, 99 Pa. 483, there had been no distribution and the administrators requested a review to present new facts of which they had no knowledge at the time of the audit.

This petitioner would have the court consider the failure of its counsel to thoroughly research the law which was in existence at the time of the audit as a justification for review. We do not believe that he is entitled to a review.

"Failure to appear and object at the audit operates as a conclusive bar to the raising at a later date all objections which could have been made at the audit": Mershon Estate, 364 Pa. 549, 550-51.

Because of the importance of the second question with respect to the administration of decedents' estates, we will consider whether the Act of Congress extends the exemption to funds of a veteran in the hands of his personal representative.

It is significant that the Veterans Administration, charged with the protection of the rights of veterans and beneficiaries, has taken the position that the exemption does not apply. This conclusion evidently follows the case of Pagel et al. v. Pagel, administrator, et al., 291 U. S. 473, in which the Supreme Court of the United States determined that proceeds of National Service Life Insurance are not exempt in the hands of the personal representative of the deceased veteran. This case was decided in 1934 and cited 38 U. S. C. §454 and held: "It cannot be held now that exemp-

tion of the fund survives both the insured and beneficiary for benefit of the heirs of the former."

Petitioner urges that immediately after the Pagel case was decided, Congress amended the above section which theretofore had limited the exemption to any persons to whom an award is made, whereas the amendment carries the exemption to funds payable to "or on account of, a beneficiary under any of the laws relating to veterans." This amendment was followed by McCormick's Estate, 8 N. Y. S. 2d 179, in which the Surrogate of New York, after carefully reviewing the purpose of the exemption, concluded that payment to a personal representative was payment "on account of a beneficiary." The surrogate regarded the amendment contained in section 454 (a) as a substantial change in the law and connected this change with the decision in Pagel v. Pagel, supra, stating that the purpose of the amendment was to overcome the effects of that decision.

The learned surrogate correctly states that Pagel v. Pagel, supra, reversed decisions of the appellate courts of Ohio and of Pennsylvania. The latter were based upon the theory that fiduciaries of estates were merely the conduits through which benefits passed directly to those entitled under wills or under the intestate laws free of claims of creditors. The Supreme Court of the United States held that section 454 did not so declare. This, in our opinion, is the starting point for a proper understanding of the issue here involved.

We are unable to agree with the reasoning and conclusion set forth in McCormick's Estate. We recognize that the various grants of the Federal Government to its veterans, their dependents and designated beneficiaries are intended to be safeguarded for the use and benefit of the designated classes who are to be the immediate recipients of the benefit, e.g., National

Service Life Insurance designates a limited class of persons who can be named as beneficiaries and when such beneficiaries are selected, the provisions of section 454(a) apply. We believe, however, that where a veteran has not received the direct benefit of the grant, whether it is pension, disability payments or proceeds of insurance by reason of nonservice connected disability, Congress did not intend the exemption to benefit either the estate of the veteran or his distributees or legatees. It is more reasonable, in our opinion, to consider that the Amendment of 1935 was for the purpose of more easily administering disposition of the grants so that guardians or persons in loco parentis or those having custody of a veteran or his dependents could receive the funds in behalf of the beneficiary without losing the protection of the exemption. We do not believe and there is nothing cited in McCormick's Estate, supra, to support the conclusion of the surrogate that section 454(a) was intended to effect substantive change in the law and to bring within the purview of the exemption funds in the hands of the fiduciary of a deceased veteran or his beneficiary. The only exception that we know is in the matter of bonus bonds growing out of the World War Adjusted Compensation Act of 1924 which expressly provides that the bonds and the proceeds thereof shall be exempt in the hands of the veteran, his dependents or his estate.

Since Congress was so careful to carry the exemption to the estate with reference to one benefit, it is logical to assume that when it passed the blanket exemption contained in section 454(a), supra, its failure to include the estate of the beneficiary within the protected class must mean that it intended the exemption not to apply to funds in the hands of the personal representative of the deceased beneficiary. For the foregoing reasons the petition for review is denied.