LAWRENCE, GUARDIAN, *v.* SHAW ET AL.

No. 549.   Argued February 12, 1937.—Decided March 1, 1937.

*Mr. John E. Benton,* with whom *Mr. Lloyd J. Lawrence* was on the brief, for petitioner.

*Mr. W. D. Boone* for respondents.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The controversy in this case relates to the liability to local taxation of certain bank deposits made by the petitioner as guardian of an incompetent veteran of the World War.   Immunity was claimed under the federal statutes.   World War Veterans Act, 1924, § 22,[1] 43 Stat.

---

[1] Section 22 provides:

"Sec. 22. That the compensation, insurance, and maintenance and support allowance payable under Titles II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Titles II, III, or IV; and shall be exempt from all taxation: *Provided,* That such compen-

606, 613, 38 U. S. C. 454; Act of August 12, 1935, §§ 3 and 5,[2] 49 Stat. 607, 609. The Supreme Court of North Carolina denied the immunity (210 N. C. 352; 186 S. E. 504) and this Court granted a writ of certiorari, January 4, 1937.

The controversy was submitted to the state court upon an agreed case. It appeared that petitioner was appointed guardian in May, 1929, and that the veteran then owned no property other than claims against the United States for unpaid compensation and insurance. The tax date in North Carolina for property taxation is April 1st. In 1930 the guardian listed for taxation the property of his ward but the tax paid was refunded under a ruling of the Attorney General of the State, and in consequence no property of the ward was listed and no tax was paid in the subsequent years. In October, 1935,

sation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Titles II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable. . . ."

[2] Sections 3 and 5 of the Act of 1935 provide:

"Sec. 3. Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments. Section 4747 of the Revised Statutes and section 22 of the World War Veterans' Act, 1924, are hereby repealed, and all other Acts inconsistent herewith are hereby modified accordingly. . . ."

"Sec. 5. That this Act shall take effect and be in force from and after its passage, but the provisions hereof shall apply to payments made heretofore under any of the Acts mentioned herein."

however, the tax officials assessed the ward's property for each of the years 1931 to 1935, inclusive. The property consisted of deposits in banks and real estate loans. No question is raised by the petitioner with respect to the taxability of the latter. See *Trotter* v. *Tennessee,* 290 U. S. 354.

The agreed case showed the bank deposits as they stood on April 1st of each year.[3] It does not appear when the amounts making up these annual balances had been deposited or whether there was any special agreement relating to them. They are scheduled as "deposits in bank," without more. The stipulation states that they "represented and, in fact, were the collections from warrants or checks drawn and issued by the United States Government in payment of compensation and insurance" due to the ward, that these warrants or checks were deposited by the guardian and credited in his bank account, and that the items assessed were "the unexpended and uninvested balances," in the hands of the guardian, of the payments thus made by the Government.[4] Petitioner paid the taxes under protest and demanded refund which was refused.

---

[3] They were $5787.72 in 1931, $3868.42 in 1932, $3704.76 in 1933, $987.48 in 1934, and $2730.93 in 1935.

[4] The paragraph of the agreed case upon this point is as follows:

"That each of the said items set out and shown in paragraph 16 as 'Deposits in Banks,' for each of said years, represented and, in fact, were the collections from warrants or checks drawn and issued by the United States Government in payment of Compensation and Insurance due by it to plaintiff's ward, which said warrants or checks were deposited by plaintiff in such depositories and credited by them in the plaintiff's account as guardian aforesaid; and the amounts of said assessments and levies made up by said defendants on the items aforesaid, and shown in said paragraph, represented and were, in fact, the unexpended and uninvested balances in the hands of the said guardian of payments aforesaid by the U. S. Government, of warrants or checks issued by it for compensation and insurance due by it to the said veteran."

We are not concerned with the questions submitted to the state court upon the agreed case so far as they related to the authority of officials under the state law to impose the tax in 1935 for the preceding years. The present contention is presented by the answer to the first question which was as follows:

"Where a guardian of a World War Veteran receives from the Veterans' Bureau of the United States Government, warrants or checks issued by said Government in payment of adjusted compensation or insurance due the guardian's ward, and such warrants or checks are deposited by the guardian in a depository, collected by it, and the proceeds are credited in the guardian's account carried in such depository, are such deposits subject to taxation by county or municipal authorities?"

The state court answered this question in the affirmative, denying the federal right asserted.

In *Trotter* v. *Tennessee, supra,* we considered the provision of § 22 of the World War Veterans' Act, 1924,[5] in relation to investments by the guardian of an incompetent veteran of the moneys received from the Government for compensation and insurance. We held that land purchased by the guardian with such moneys was not exempt. We said: "The statute speaks of 'compensation, insurance, and maintenance and support allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises. Veterans who choose to trade in land or in merchandise, in bonds or in shares of stock, must pay their tribute to the State." *Id.,* pp. 356, 357.

Having no doubt that the moneys payable by the Government to the veteran were exempt until they came

---

[5] See Note 1.

into his hands or those of his guardian, we left the question open "whether the exemption remained in force while they continued in those hands or on deposit in a bank." The World War Veterans' Act, 1924, provided that the compensation and insurance allowances should be "exempt from all taxation." The Act of 1935 [6] is more specific, providing that the payments shall be exempt from taxation and shall not be liable to process "either before or after receipt by the beneficiary." There was added the qualification that the exemption should not extend "to any property purchased in part or wholly out of such payments." This more detailed provision was substituted for that of the earlier Act and was expressly made applicable to payments theretofore made. We think it clear that the provision of the later Act was intended to clarify the former rather than to change its import and it was with that purpose that it was made retroactive.[7]

The state court found no distinction with respect to taxability "between stocks and bonds, and notes and bank deposits and other solvent credits." Amplifying this position, counsel for respondent at this bar, while conceding that the warrants or checks issued by the Government would be exempt, and that if they were cashed the moneys thus received would likewise be exempt until they were invested, contended that if the guardian instead of cashing the warrants or checks deposited them in bank, the resulting bank credits would be taxable. We think that this contention is inadmissible. Congress has declared that the payments of benefits by the Government shall be exempt not only before but "after receipt by the beneficiary." We cannot conceive that it was the intent of Congress that the veteran should lose the bene-

---

[6] See Note 2.

[7] See report of the Committee on Finance of the Senate, Sen. Rep. No. 1072, 74th Cong., 1st Sess.

fit of this immunity, which would attach to the moneys in his hands, by depositing the government warrants or checks in bank to be collected and credited in the usual manner. These payments are intended primarily for the maintenance and support of the veteran. To that end neither he nor his guardian is obliged to keep the moneys on his person or under his roof. As the immunity from taxation is continued after the payments are received, the usual methods of receipt must be deemed available so that the amounts paid by the Government may be properly safeguarded and used as the needs of the veteran may require.

The provision of the Act of 1935 that the exemption should not apply to property purchased out of the moneys received from the Government shows the intent to deny exemption to investments, as was ruled in the *Trotter* case. It is of course true that deposits in bank may be made under a special agreement by which the deposits assume the character of investments and would lose immunity accordingly. No such agreement is shown here. Nor are the bank balances shown to be the proceeds of investments. They are stipulated to be "uninvested balances" of the government payments. Some reference was made at the bar to the possible effect of an allowance of interest upon bank deposits. It does not appear that there was such an allowance in this instance and we do not suggest that a mere allowance of interest upon deposits would be enough to destroy an immunity where it would otherwise attach. We hold that the immunity from taxation does attach to bank credits of the veteran or his guardian which do not represent or flow from his investments but result from the deposit of the warrants or checks received from the Government when such deposits are made in the ordinary manner so that the proceeds of the collection are subject to draft upon demand for the veteran's use. In order to carry out the

intent of the statute, the avails of the government warrants or checks must be deemed exempt until they are expended or invested.

The answer by the state court is broad enough to cover bank deposits of that sort and we consider the ruling in that application to be contrary to the federal statute. The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*